# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DOMINGO MONTES-MEDINA,

    Defendant.

Case No. 15-20020-JAR-2

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendant Domingo Montes-Medina's Motion for Appointment of Counsel (Doc. 617) and Motion to Reduce Sentence Under 18 U.S.C. § 3582(c)(1)(A) (Doc. 619). The motions are fully briefed, and the Court is prepared to rule. Because Montes-Medina is now represented by counsel, the Court denies as moot his motion to appoint counsel. And for the reasons stated in detail below, the Court grants his motion to reduce sentence.

**I.    Background**

On June 20, 2017, Montes-Medina pleaded guilty to conspiracy to manufacture, possess with intent to distribute, and to distribute fifty grams of more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846, and 18 U.S.C. § 2.[1] On October 4, 2017, the Court sentenced him to a 300-month term of imprisonment, followed by ten years of supervised release.[2] The Court ordered Montes-Medina's sentence to run consecutively "to any remaining

---

[1] Doc. 424.

[2] Doc. 466.

unserved term of imprisonment imposed in U.S. District Court, District of Utah Case No. 2:15CR00097."[3]

Montes-Medina is incarcerated at FMC Butner in Butner, North Carolina. As of July 12, 2021, the Bureau of Prisons ("BOP") reports 177 inmates have tested positive for COVID-19 out of 609 inmates tested at this facility.[4] The BOP further reports that FMC Butner has no active inmate or staff cases of COVID-19.[5] Within the broader Butner correctional complex, which includes FMC Butner and three other federal correctional institutions, 2,457 inmates and 896 staff have been vaccinated against COVID-19 to date.[6] Montes-Medina is 61 years old, and his projected release date is September 13, 2039.

On April 8, 2021, Montes-Medina, proceeding *pro se*, filed a motion requesting counsel "to assist [him] in filing [a motion] for compassionate release and reduction in sentence under 18 U.S.C. § 3582(c)(1)(A)(i) and home confinement under § 3426."[7] The next day, the Federal Public Defender ("FPD") entered an appearance on Montes-Medina's behalf pursuant to District of Kansas Standing Order 19-1.[8] On April 23, 2021, Montes-Medina, now represented by counsel, filed a motion seeking a sentence reduction under § 3582(c)(1)(A).[9] Montes-Medina suffers from multiple myeloma. He is wheelchair-bound and has less than a year to live. Based

---

[3] *Id.* at 2. On August 29, 2018, Montes-Medina filed a motion to vacate and discharge with prejudice under 28 U.S.C. § 2255. Doc. 541. That motion has been stayed pending the outcome of an appeal in a related case. *See In re CCA Recordings Litig.*, No. 19-2491-JAR-JPO, Doc. 922 (D. Kan. May 25, 2021).

[4] *COVID-19 Coronavirus: COVID-19 Cases*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus (last visited July 12, 2021).

[5] *Id.*

[6] *Id.*

[7] Doc. 617.

[8] Doc. 618. Under District of Kansas Standing Order 19-1, the FPD was appointed to represent any indigent defendant "to determine whether that defendant may qualify to seek compassionate release under section 603 of the First Step Act (P.L. 115-391) based on medical condition or age."

[9] Doc. 619.

on his terminal illness and his risk for severe complications should he contract COVID-19 in prison, Montes-Medina asks the Court to reduce his sentence to time served and to add a period of home detention as a condition of his supervised release term. Montes-Medina has proposed a release plan to live with his sister in Riverside, California, which has been approved by the United States Probation Office.

The government filed a response in opposition to Montes-Medina's motion for sentence reduction,[10] to which Montes-Medina replied.[11]

## II. Legal Standard

"Federal courts are forbidden, as a general matter, to modify a term of imprisonment once it has been imposed, but th[at] rule of finality is subject to a few narrow exceptions."[12] "One such exception is contained in [18 U.S.C.] § 3582(c)(1)."[13] Section 3582(c)(1)(A), as amended by the First Step Act of 2018,[14] permits a court to reduce a term of imprisonment "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." Before reducing a term of imprisonment, a court must find that (1) "extraordinary and compelling reasons" warrant a sentence reduction, (2) such a reduction is consistent with "applicable policy

---

[10] Doc. 622.

[11] Doc. 623.

[12] *United States v. Maumau*, 993 F.3d 821, 830 (10th Cir. 2021) (quoting *Freeman v. United States*, 564 U.S. 522, 526 (2011)).

[13] *Id.*

[14] Pub. L. No. 115-391, 132 Stat. 5194.

statements issued by the Sentencing Commission," and (3) the applicable sentencing factors set forth in 18 U.S.C. § 3553(a) support such a reduction.[15]

### III. Discussion

#### A. Exhaustion

On October 15, 2020, Montes-Medina submitted a request for a sentence reduction to the warden of his facility based on his terminal illness.[16] The warden did not act on the request until December 18, 2020—64 days later—when he sent a letter to the BOP Assistant Director/General Counsel "recommending [that] consideration be given to [Montes-Medina's] request."[17] On March 1, 2021, over two months after the warden sent his letter, Montes-Medina's request was denied by the BOP's Assistant Director/General Counsel.[18] The government does not dispute that this satisfies § 3582(c)(1)(A)'s exhaustion requirement.

The Court finds that Montes-Medina has met § 3582(c)(1)(A)'s exhaustion requirement. Although § 3582(c)(1)(A) provides two alternatives—exhaustion of all administrative rights *or* the lapse of 30 days from the warden's receipt of the defendant's request, whichever is earlier—Montes-Medina has satisfied both. Far more than 30 days have elapsed since the warden received the request, *and*, in a final administrative decision, the BOP denied the request.[19]

---

[15] 18 U.S.C. § 3582(c)(1)(A); *see United States v. McGee*, 992 F.3d 1035, 1042 (10th Cir. 2021).

[16] Doc. 619-1.

[17] Doc. 619-4.

[18] Doc. 619-5.

[19] A denial of a compassionate release request by the General Counsel of the BOP "constitutes a final administrative decision" and, as such, "an inmate may not appeal the denial through the Administrative Remedy Procedure." 28 C.F.R. § 571.63(d).

B.   **Extraordinary and Compelling Reasons**

Next, the Court must consider whether "extraordinary and compelling reasons warrant a sentence reduction."[20] District courts have "the authority to determine for themselves what constitutes 'extraordinary and compelling reasons.'"[21] But that authority "is bounded by the requirement . . . that a reduction in sentence be consistent with applicable policy statements issued by the Sentencing Commission."[22] Relevant here, the Commentary to the Sentencing Commission's most recent policy statement, promulgated before the enactment of the First Step Act, provides that "extraordinary and compelling reasons exist" when "[t]he defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)."[23] The Tenth Circuit recently clarified, however, that the Sentencing Commission's existing policy statement "is applicable only to motions filed by the Director of the BOP, and not to motions filed directly by defendants."[24] This Court is thus empowered to consider "the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it] in motions for compassionate release," and the existing policy statement does not constrain the Court's discretion.[25]

Montes-Medina asserts that his terminal illness and his risk for severe complications from COVID-19 constitute extraordinary and compelling reasons for a sentence reduction. Montes-Medina suffers from multiple myeloma, a cancer of the blood, which the Centers for Disease

---

[20] 18 U.S.C. § 3582(c)(1)(A).

[21] *United States v. Maumau*, 993 F.3d 821, 832 (10th Cir. 2021).

[22] *Id.*

[23] U.S.S.G. § 1B1.13 cmt. n.1(A).

[24] *Maumau*, 993 F.3d at 837.

[25] *United States v. Booker*, 976 F.3d 228, 237 (2d Cir. 2020); *see Maumau*, 993 F.3d at 837.

Control and Prevention states "can make you more likely to get severely ill from COVID-19."[26] Since 2018, Montes-Medina has had multiple rounds of chemotherapy and radiation. He states that "the cancer has caused skeletal lesions on his skull, spine, hip, and pelvis", and, "[a]s a result, he requires a wheelchair to move about the prison."[27] At this point, all FMC Butner can offer is palliative care. On October 22, 2020, medical staff at FMC Butner prepared a "Comprehensive Medical Summary" for him, which states: "The inmate **HAS BEEN** diagnosed with a terminal medical condition. Life expectancy is 18 months."[28] Today, Montes-Medina has less than one year left to live.

The Court finds that Montes-Medina's terminal illness—even without considering the COVID-19 pandemic—constitutes an extraordinary and compelling reason for a sentence reduction under § 3582(c)(1)(A). That the cancer also places Montes-Medina at an increased risk for severe illness from COVID-19 provides another extraordinary and compelling reason for such a reduction. The government concedes that Montes-Medina has met his burden of showing that extraordinary and compelling reasons exist, but it opposes his motion on the ground that the sentencing factors do not support his release.

### C.   Section 3553(a) Factors

Section 3582(c)(1)(A) requires the Court to consider the sentencing factors set forth in § 3553(a) before granting a sentence reduction.[29] Those factors include: (1) "the nature and

---

[26] *People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated May 13, 2021) (listing cancer as a medical condition that may increase the risk for severe illness from COVID-19).

[27] Doc. 619 at 6.

[28] Doc. 619-2.

[29] *See Maumau*, 993 F.3d at 831 ("[Section] 3582(c)[(1)(A)] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, [a sentence] reduction . . . is warranted in whole or in part under the particular circumstances of the case." (second and third alterations in original) (quoting *United States v. Jones*, 980 F.3d 1098, 1107 (6th Cir. 2020))).

circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; (3) "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct"; and (4) "the need for the sentence imposed . . . to protect the public from further crimes of the defendant."[30]

The government asserts that reducing Montes-Medina's sentence to time served would undermine the seriousness of the offense and discount his lengthy criminal history. In other words, the government asks the Court to focus its consideration of the § 3553(a) factors on two factors: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; and (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment.[31] But the Court must consider all applicable § 3553(a) factors, and, in doing so, it does not take a frozen-in-time approach. Instead, the Court considers the § 3553(a) factors in light of post-sentencing factual developments.[32]

Although Montes-Medina has served less than half of his sentence, he has served much of it while seriously ill. As stated above, Montes-Medina suffers from multiple myeloma, for which he has had several rounds of chemotherapy and radiation over the last three years, and he is now confined to a wheelchair. That experience has made his sentence "significantly more

---

[30] 18 U.S.C. § 3553(a).

[31] *Id.* § 3553(a)(1), (a)(2)(A).

[32] *See United States v. Kibble*, 992 F.3d 326, 335 (4th Cir. 2021) (per curiam) (Gregory, C.J., concurring) ("[A] district court may [not] fulfill its duty to reconsider the § 3553(a) factors by merely recounting the considerations that supported the original sentence."); *United States v. Rose*, 379 F. Supp. 3d 223, 235 (S.D.N.Y. 2019) ("[C]onsideration of post-sentencing factual developments is appropriate under § 404 of the First Step Act."), *aff'd*, 841 F. App'x 328 (2d Cir. 2021); *see also Pepper v. United States*, 562 U.S. 476, 491 (2011) (stating that evidence of post-sentencing conduct "may be highly relevant" under § 3553(a) because it provides the "most up-to-date picture of [the defendant]'s 'history and characteristics'" and "sheds light on the likelihood that [the defendant] will engage in further criminal conduct" (quoting 18 U.S.C. § 3553(a))).

laborious than that served by most inmates."³³ And with less than one year left to live, his compassionate release request is, in his words, "no more than a request to die with dignity and not in prison."³⁴ The Court therefore finds that, notwithstanding the seriousness of the offense and his criminal history, the sentence Montes-Medina has already served—combined with his ten-year term of supervised release, two years of which he will serve under the condition of home detention—appropriately reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense. Indeed, to require Montes-Medina to serve out the rest of his sentence under these circumstances would result in a sentence that is greater than necessary to fulfill the purposes of sentencing.

As the government concedes, releasing Montes-Medina will not pose a danger to the safety of the community.³⁵ His worsening physical condition and his physical limitations suggest that "his ability to pose a threat is significantly diminished."³⁶ Moreover, the warden of FCC Butner stated in his letter to the BOP's Assistant Director/General Counsel that Montes-Medina has "maintained clear conduct since his arrival to FMC Butner," and, based on his good behavior, he is currently classified by the BOP as a "'LOW' security level inmate."³⁷ His only disciplinary infraction—for using a phone or mail without authorization—dates back to 2000, when he was serving a sentence for a prior offense. Montes-Medina's clean disciplinary record, "and the absence of any disciplinary infraction related to violence or drug use, demonstrates that he is unlikely to commit future criminal acts or pose a danger to the community."³⁸ And, at over

---

³³ *United States v. Conner*, 465 F. Supp. 3d 881, 893 (N.D. Iowa 2020) (citations omitted).

³⁴ Doc. 623 at 3.

³⁵ *See* Doc. 622 at 16 (recognizing that Montes-Medina is not a "direct danger to society").

³⁶ *Conner*, 465 F. Supp. 3d at 893.

³⁷ Doc. 619-4.

³⁸ *United States v. Yu*, No. 90 CR. 47-6, 2020 WL 6873474, at *5 (S.D.N.Y. Nov. 23, 2020).

60 years old, Montes-Medina presents a statistically low risk of recidivism,[39] further allaying concerns of potential future criminal conduct.  Any remaining risk to the community will be mitigated by the conditions of Montes-Medina's release, which will include two years of home detention.

Accordingly, the applicable § 3553(a) factors do not outweigh the extraordinary and compelling reasons that warrant a reduction in Montes-Medina's sentence.  The Court therefore grants Montes-Medina's motion and reduces his sentence to time served.  His ten-year term of supervised release shall start immediately upon his release, and he shall serve the first two years of his supervised release term under the condition of home detention.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant Domingo Montes-Medina's Motion to Reduce Sentence (Doc. 619) is **granted**.  His motion to Appoint Counsel (Doc. 617) is **denied as moot**.

**IT IS FURTHER ORDERED** that Montes-Medina's ten-year term of supervised release shall start immediately upon his release from the Bureau of Prisons.  All previously imposed terms and conditions of Montes-Medina's term of supervised release shall remain in effect.  In addition, during that term of supervised release, Montes-Medina shall be on home detention for two years and is restricted to his residence at all times except for medical necessities and court appearances or other activities specifically approved by the U.S. Probation Officer.  Montes-Medina will be required to wear a location monitoring device, which will include Radio Frequency, Global Positioning System and/or Random Tracking at the discretion of the U.S.

---

[39] *See* U.S. Sentencing Comm'n, The Effects of Aging on Recidivism Among Federal Offenders 3 (2017), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf ("[A] key finding[] of the [Sentencing] Commission's study of federal offenders' recidivism by age at release [is] that . . . [o]lder offenders were substantially less likely than younger offenders to recidivate following release.").

Probation Officer, and shall abide by all technology requirements.  Montes-Medina must follow all location monitoring procedures specified by the U.S. Probation Officer, and must contribute toward the cost, to the extent he is financially able to do so, as directed by the Court and/or U.S. Probation Officer.  Montes-Medina shall self-quarantine during the first fourteen days of his term of supervised release.

**IT IS FURTHER ORDERED** that there being a verified residence and an appropriate release plan in place, this Order is stayed for up to fourteen days to make appropriate travel arrangements and to ensure Montes-Medina's safe release.  Montes-Medina shall be released as soon as appropriate travel arrangements have been made and it is safe for him to travel.  There shall be no delay in ensuring travel arrangements are made.  If more than fourteen days are needed to make appropriate travel arrangement and ensure Montes-Medina's safe release, then the parties shall immediately notify the Court and show cause why the stay should be extended.

**IT IS SO ORDERED.**

Dated: July 12, 2021

S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE
